Appeal No. 13-35290

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————

LESTER R. SHINAULT,
*Appellant*,

*v.*

DICK HAWKS; TAMI DOHRMAN; MARTHA MCDANIEL;
OREGON DEPT. OF CORRECTIONS GENERAL SERVICE DIVISION,
*Appellees*.

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
THE HONORABLE ANNA J. BROWN, JUDGE
CASE NO. 3:11-CV-00436-PK

———————

**APPELLANT'S REPLY BRIEF**

———————

O'MELVENY & MYERS LLP
DANIEL H. BOOKIN
ANNA-ROSE MATHIESON
TWO EMBARCADERO CENTER, 28TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3823
TELEPHONE: (415) 984-8700
FACSIMILE: (415) 984-8701

*Pro Bono Attorneys for Appellant Lester R. Shinault*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................3

    I.     DEFENDANTS VIOLATED MR. SHINAULT'S CLEARLY
          ESTABLISHED RIGHT TO PROCEDURAL DUE PROCESS.........3

        A.    Mr. Shinault Presented Ample Evidence to Preserve and
              Support His Procedural Due Process Claim .............................4

        B.    Defendants Deprived Mr. Shinault of a Protected
              Property Interest........................................................................7

        C.    Due Process Requires a Pre-deprivation Hearing....................11

        D.    Mr. Shinault Was Denied a Meaningful Opportunity to
              Be Heard at the Post-deprivation Hearing ................................16

        E.    Defendants Are Not Entitled to Qualified Immunity ...............18

    II.    DEFENDANTS VIOLATED MR. SHINAULT'S CLEARLY
          ESTABLISHED RIGHT TO ADEQUATE MEDICAL CARE ........21

        A.    Defendants Denied Mr. Shinault Adequate Medical Care
              by Seizing All Available Funds for Future Diabetes Care .......21

        B.    Defendants Are Not Entitled to Qualified Immunity
              Because Mr. Shinault Had a Clearly Established Right to
              Future Medical Care .................................................................24

CONCLUSION ....................................................................................28

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*A.D. v. Cal. Highway Patrol*,
    712 F.3d 446 (9th Cir. 2013) ..............................................................19

*Ashcroft v. al-Kidd*,
    131 S. Ct. 2074 (2011) .....................................................................19

*Blaisdell v. Frappiea*,
    729 F.3d 1237 (9th Cir. 2013) ............................................................6

*Burns v. Pa. Dep't of Corr.* ("*Burns I*"),
    544 F.3d 279 (3d Cir. 2008) ........................................... 1, 10, 11, 20

*Burns v. Pa. Dep't of Corr.* ("*Burns II*"),
    642 F.3d 163 (3d Cir. 2011) ..................................................... 13, 18

*Carey v. Piphus*,
    435 U.S. 247 (1978)...........................................................................18

*Clement v. Gomez*,
    298 F.3d 898 (9th Cir. 2002) ..................................................... 23, 24

*Connecticut v. Doehr*,
    501 U.S. 1 (1991)....................................................................... 8, 13

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989)...........................................................................23

*EEOC v. Boeing Co.*,
    577 F.3d 1044 (9th Cir. 2009) ............................................................5

*Fuentes v. Shevin*,
    407 U.S. 67 (1972)..............................................................................8

*Gibson v. Cnty. of Washoe*,
    290 F.3d 1175 (9th Cir. 2002) ..........................................................24

*Giebel v. Sylvester*,
    244 F.3d 1182 (9th Cir. 2001) ................................................... 20, 26

## TABLE OF AUTHORITIES
### (continued)

Page

*Goldberg v. Kelly*,
397 U.S. 254 (1970) ..................................................................................12

*Haley v. Cnty. of Del Norte, Cal.*,
2009 WL 3568897 (N.D. Cal. Oct. 30, 2009) ....................................23

*Helling v. McKinney*,
509 U.S. 25 (1993) ......................................................................... 25, 26

*Henry A. v. Willden*,
678 F.3d 991 (9th Cir. 2012) ..............................................................20

*Hope v. Pelzer*,
536 U.S. 730 (2002) ....................................................................... 19, 26

*Hydrick v. Hunter*,
669 F.3d 937 (9th Cir. 2012) ..............................................................20

*Kaley v. United States*,
134 S. Ct. 1090 (2014) .........................................................................15

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .............................................................................11

*Lolli v. Cnty. of Orange*,
351 F.3d 410 (9th Cir. 2003) ................................................... 2, 22, 24

*Matthews v. Eldridge*,
424 U.S. 319 (1976) .............................................................................12

*Quick v. Jones*,
754 F.2d 1521 (9th Cir. 1984) ................................................... passim

*Sandoval v. Las Vegas Metro. Police Dep't*,
756 F.3d 1154 (9th Cir. 2014) ............................................................19

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ............................................................10

iii

## TABLE OF AUTHORITIES
### (continued)

Page

*Singleton v. Wulff*,
    428 U.S. 106 (1976)..............................................................................7

*Stoot v. City of Everett*,
    582 F.3d 910 (9th Cir. 2009) ...............................................................5

*Tillman v. Lebanon Cnty. Corr. Facility*,
    221 F.3d 410 (3d Cir. 2000) ...............................................................13

*Turner v. Rogers*,
    131 S. Ct. 2507 (2011)........................................................................13

*United States v. Lanier*,
    520 U.S. 259 (1997)............................................................................26

*United States v. Monsanto*,
    491 U.S. 600 (1989)............................................................................15

*W. Coach Corp. v. Shreve*,
    475 F.2d 754 (9th Cir. 1973) .............................................................12

*Wakefield v. Thompson*,
    177 F.3d 1160 (9th Cir. 1999) ................................................... passim

*Walters v. Grossheim*,
    525 N.W.2d 830 (Iowa 1994) ...................................................... 8, 12

*Zinermon v. Burch*,
    494 U.S. 113 (1990)................................................................... 11, 16

## STATUTES

O.R.S. § 179.620.....................................................................................9

O.R.S. § 179.640............................................................................ 13, 25

O.R.S. § 179.731............................................................................ 13, 25

iv

**TABLE OF AUTHORITIES**
**(continued)**

Page

## REGULATIONS

O.A.R. 291-105-0015....................................................................................10

O.A.R. 291-203-0040................................................................... 13, 14, 25

O.A.R. 291-203-0080................................................................... 13, 14, 25

## OTHER AUTHORITIES

Restatement (Third) of Trusts......................................................................9

SB 183 Public Hearing Before the S. Comm. on Judiciary, 2001 Leg.
　　71st Sess. (Or. 2001)............................................................................25

v

## INTRODUCTION

In Kafkaesque style, Defendants argue that they are allowed, without a hearing, to deprive an inmate of funds he needs to hire a lawyer (which is his right) to help him prove that Defendants are not entitled to take his funds. The Due Process Clause does not permit this strange result.

Defendants try to minimize their actions as only a "funds freeze," suggesting due process rights are not implicated when prison officials seize funds from an inmate's trust account and move the funds to a reserve account the inmate cannot access. But the law has long been clearly established that due process requires a pre-deprivation hearing before prison officials seize money in inmate trust accounts, *Quick v. Jones*, 754 F.2d 1521, 1523-24 (9th Cir. 1984), even when the government does not immediately convert the funds to its own use, *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 283-84 (3d Cir. 2008) ("*Burns I*") (inmate entitled to due process before prison officials levy an "assessment" on prison trust account, even when prison officials make no attempt to withdraw the funds). And as a factual matter Defendants did not simply freeze Mr. Shinault's account; rather, they seized and withdrew over $65,000 from his trust account on June 2, 2009, without affording Mr. Shinault pre-deprivation process.

Defendants spend most of their brief on side issues. They argue that Mr. Shinault waived his procedural due process argument even though his pro se

filings repeatedly argued that Defendants "withdrew $65,353.94 from Shinault['s] inmate Trust Account on June 2, 2009" and refused to release his funds to allow him to hire an attorney. ER38; ER41-42; ER45; ER47. Defendants spend pages trying to establish that Mr. Shinault waived his due process rights by "voluntarily" depositing money in the prison trust fund, but their "voluntary deposit" theory has no support in either the factual record or prior precedent. On this record the district court erred in granting summary judgment to Defendants.

The harm from Defendants' actions was significant because Mr. Shinault needs his medical settlement funds to pay for diabetes medication and treatment. Defendants do not dispute that they were aware of the serious nature of diabetes, nor do they dispute their obligation under clearly established law to provide for the medical needs of diabetic inmates. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418-20 (9th Cir. 2003).

Defendants argue, however, that their obligations end at the prison door, and claim they are immunized from liability because any harm that would befall Mr. Shinault would occur after his release. But this Court has upheld deliberate indifference claims even when the harm occurs after the inmate's release. *Wakefield v. Thompson*, 177 F.3d 1160, 1162-64 (9th Cir. 1999). The focus in a deliberate indifference claim is on defendants' actions, and here during the time Mr. Shinault was incarcerated the Defendants showed a callous disregard for his

medical needs.  This record is more than sufficient to create a material dispute over whether Defendants' actions constituted deliberate indifference.   The district court's order should be reversed.

## ARGUMENT

## I.   DEFENDANTS VIOLATED MR. SHINAULT'S CLEARLY ESTABLISHED RIGHT TO PROCEDURAL DUE PROCESS

Much of Defendants' argument rests on an artificial distinction between a "withdrawal" claim and a "freezing" claim.  RB18-19.[1]  Defendants suggest that on appeal Mr. Shinault challenges only the June 2009 "freeze" of his assets, and in the district court challenged only the ultimate "withdraw[al]" of funds after the October 2009 hearing.  *Id*.  But these are not separate claims—throughout the case Mr. Shinault has challenged the seizure of his trust account funds without due process of law.  That seizure occurred when Defendants withdrew the funds from his account on June 2, 2009, and the deprivation continued during the constitutionally inadequate post-deprivation hearing—a hearing in which the pre-deprivation seizure left Mr. Shinault unable to exercise his right to retain counsel.  Mr. Shinault challenged each aspect of the deprivation below and challenges each on appeal.  Reversal is warranted.

---

[1] The answering brief of Defendants-Appellees (Dkt. 31) is cited as "RB."
Mr. Shinault's opening brief on appeal (Dkt. 21) is cited as "AOB."

**A.      Mr. Shinault Presented Ample Evidence to Preserve and Support His Procedural Due Process Claim**

The undisputed record shows that Defendants *seized and withdrew* the full cost of care from Mr. Shinault's trust account on June 2, 2009.  ER73 (Mr. Shinault's inmate trust account statement showing "COST OF CARE" deduction in the sum of "65,353.94" on June 2, 2009).  As the magistrate judge found, Defendants "withdrew $65,353.94 from the account on June 2, 2009 to pay for the cost of care of Shinault's incarceration."  ER16-17 n.3.  From that point on, Mr. Shinault was entirely deprived of access to the seized funds, which were held in a "reserved miscellaneous" account separate from his primary trust account. ER70; ER73.  Defendants cannot minimize this as something less than a seizure.

Mr. Shinault challenged this seizure in his complaint and throughout the proceedings below.  He argued that Defendants denied him due process by issuing the Ability to Pay order on May 29 and then seizing his trust account funds on June 2, and specifically argued that this pre-hearing seizure deprived him of access to the courts and the funds needed to hire an attorney.  In his complaint, he alleged:

> 63.      Plaintiff has not been adequately afforded any representation to help him in a defense from O.D.O.C. [the Oregon Department of Corrections] collecting the $61,352.39 as they imposed on Ability to Pay Order notice on May 29, 2009 and a second Ability to Pay order notice of intent to setoff as of October 19, 2010.

ER113.  In his filings below, he argued:

4

> On May 29, 2009 ODOC Central Trust issued a ability to pay order and Determination of charges and Garnished $65,353.94 out of Shinault's ODOC Inmate Central Trust Account without Shinault con[s]ent.
>
> ODOC Central Trust withdrew $65,353.94 from Shinault inmate Trust Account on June 2, 2009 to pay for his cost of care of Shinault's incarceration without Shinault consent.

ER37-38. In arguing that his lack of funds prevented him from retaining counsel to represent him at the October 2009 hearing, Mr. Shinault explained that he "tr[ied] to ask Dick Hawks ODOC Central Trust Manager and Dick H. said the $61,352.39 will *remain in his care* until this matter is resolve[d]. *Shinault did not have the financial capacity to retain another lawyer* to represent Shinault at the Telephon[e] Contested Hearing." ER47 (emphasis added); *see also* ER100; ER109 ("Plaintiff was denied the right to be represented by an Attorney"); ER114 ("The failure to allow the plaintiff to be represented by an outside attorney or someone that could explain to Shinault what the O.D.O.C. rules or regulations are during the co[u]rse of Shinault hearing was a violation of the Fourteenth, Sixth Amendments.").

On summary judgment, the Court must credit Mr. Shinault's version of the facts over Defendants' self-serving reading (RB21-22) of what these statements "likely meant." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1046 (9th Cir. 2009) (credit the nonmoving party's factual submissions for purposes of summary judgment); *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (same). Moreover,

5

Mr. Shinault proceeded pro se below, and this Court has "an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). In addition, Defendants should be estopped from arguing the evidence is insufficient, since they convinced the district court to stay all discovery by arguing that additional facts were unnecessary to resolve their summary judgment motion. D. Ct. Dkt. 31 at 2; D. Ct. Dkt. 40. There is no basis for Defendants' argument that Mr. Shinault waived or failed to present sufficient evidence to support his procedural due process claim.

Defendants attempt to confuse the record by asserting that Mr. Shinault withdrew funds from his trust account to make purchases at the commissary and to retain an attorney, suggesting those transactions show "that ODOC permitted plaintiff, on multiple occasions, to access his funds" between June and August 2009. RB22 (citing ER72-74, ER171, ER107). But those withdrawals were of funds held by Mr. Shinault in his inmate trust account—that is, the funds left over after Defendants seized more than $65,000. ER70-75. The use of the funds in Mr. Shinault's trust account has no bearing on whether Mr. Shinault had access to the seized funds. The only withdrawals from the seized funds were pursuant to Oregon Department of Justice garnishment orders, a process entirely outside of Mr. Shinault's control. ER152-53 (approximately $4,000 garnished); ER94; ER97.

In sum, Mr. Shinault has amply satisfied his minimal burden of placing "some evidence in the record" that Defendants seized his funds in June 2009 and refused to release those funds to allow him to retain a lawyer. And Defendants' refusal to release the funds is confirmed by the transcript of the October 2009 hearing. *See* Unopposed Motion to Supplement Record, Dkt. 19-1; ER179-81 (Mr. Shinault testified that he could not hire an attorney for the hearing because "Attorneys you have to pay money. I don't have money. They have my money in hostage."). Indeed, Defendants appear to concede that there is sufficient evidence they refused to release any of Mr. Shinault's funds if the hearing transcript is considered. RB22 (noting that, "*if the court denies the motion to supplement*, the record contains no evidence that plaintiff ever asked for use of this funds" (emphasis added)).[2] Defendants' waiver argument should be rejected.

## B. Defendants Deprived Mr. Shinault of a Protected Property Interest

Defendants dispute even the basic proposition that seizure of Mr. Shinault's trust funds qualifies as a deprivation of a protected property interest requiring due process of law. But the law here has been settled for decades. *Quick*, 754 F.2d at

---

[2] In any event, this Court has discretion to resolve the merits of the due process claim. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the court of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). No surprise will result should the Court consider Mr. Shinault's due process argument; Defendants fully briefed the issue, and as noted discovery was cut off at their behest.

1523-24; *Walters v. Grossheim*, 525 N.W.2d 830, 831-32 (Iowa 1994) (Defendant prison officials do not "quarrel with the notion that an inmate's money in prison accounts is protected property under the Constitution.  Indeed the law in that regard appears well settled." (citing, *e.g.*, *Quick*, 754 F.2d at 1523)).  For this reason Defendants conceded below that Mr. Shinault "has a protected property interest in the funds in his prison trust account and he is thus entitled to due process in connection with any forfeiture of those funds."  D.Ct. Dkt. 28, at 4 (citing *Quick*, 754 F.2d at 1523); ER6.  They have no grounds to change their position on appeal.

Defendants' argument seems to be that an account "freeze" is different from a seizure, and that Mr. Shinault consented to any account freeze by "voluntarily" depositing the funds in his prison trust account.  RB25-26.  This is wrong for at least four reasons.  First, as a factual matter Defendants actually seized Mr. Shinault's funds, as explained above.  ER73, ER16-17 n.3; *supra* Section I.A.

Second, even a freeze or attachment of assets requires due process protections.  *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("[O]ur cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); *Fuentes v. Shevin*, 407 U.S. 67, 84-85 (1972).

8

Third, the suggestion that Mr. Shinault consented to Defendants' actions is unsupported by the record. As Defendants concede, the "record does not establish whether [Mr. Shinault] directed his counsel to send those funds to ODOC." RB25. When Mr. Shinault's Texas attorneys contacted the prison to determine how to get the settlement funds to Mr. Shinault, Defendant Hawks assured them the settlement proceeds would be "safe" if they were sent to the trust account. ER105. The fact that Mr. Shinault's out-of-state products-liability counsel relied on the representations of the account trustee that the funds would be "safe" hardly establishes that Mr. Shinault consented to giving the trustee free rein over those funds—if anything, it cuts the other way. *See* Restatement (Third) of Trusts § 78(3) ("a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter").[3] And not only was Mr. Shinault unaware that the funds would be deposited into the prison trust system, and not only did the trust fiduciary represent that the funds would be "safe," but Oregon law prohibits

---

[3] Defendants try to analogize to cases holding independent contractors can be terminated at will, implying the state had complete discretion over the trust funds (RB26). To the contrary, Oregon law provides that "assets held in trust by a trustee for a person are subject to laws generally applicable to trusts." O.R.S. § 179.620(4). Trust law, of course, places heavy duties on trustees—particularly when the trustees are converting the money for their own purposes. Restatement (Third) of Trusts § 78(2) ("the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the fiduciary's duties and the personal interests").

inmates from having cash or checks in prison, so his alternatives were limited.

O.A.R. 291-105-0015(1)(d)(F) & (1)(e)(A) (checks and cash are "contraband" that

will be confiscated and will subject an inmate to disciplinary sanctions).

Defendants' voluntary consent theory thus fails as a factual matter.

Fourth, and more broadly, the state cannot through regulation deprive an

inmate of the protection of the Due Process Clause, despite the inmate's decision

to "voluntarily" deposit the funds in a prison trust account. Clear precedent

establishes that a state's seizure of funds in a prison trust account is a deprivation

triggering due process protections, *Quick*, 754 F.2d at 1523-24, and this is true

even when state statutes governing the prison trust provide that the state can

dispose of the funds as it sees fit, *see Schneider v. Cal. Dep't of Corr.*, 151 F.3d

1194, 1199 (9th Cir. 1998) (inmates were entitled to interest on prison trust

account funds even though they "voluntarily" deposited the funds into a prison

trust account that explicitly provides no interest would be paid); *id.*

("[C]onstitutionally protected property rights can—and often do—exist *despite*

statutes . . . that appear to deny their existence.").

The law was thus clearly established before 2009 that seizure of funds in an

inmate's trust account is a deprivation of property that triggers due process

protection. A Third Circuit case from 2008 illustrates the point. *Burns I*, 544 F.3d

at 286. In *Burns*, prison officials levied an assessment against Burns' prison trust

account after a hearing at which he was found to have attacked another inmate. *Id.* at 282-83. The prison never attempted to collect this assessment—and indeed, specifically disavowed any intent to ever collect it—but the prisoner filed suit challenging the process afforded him at the hearing, and alleging that the assessment placed a cloud on his trust account. *Id.* at 281, 283. After a careful examination of the property rights at stake, the Third Circuit concluded that the assessment itself worked a deprivation of the inmate's property rights, and thus was improper without due process protections. *Id.* at 291. So too, here. Defendants' seizure of Mr. Shinault's trust account funds was at least as significant a deprivation as the assessment in *Burns*, and Mr. Shinault was entitled to due process.

### C. Due Process Requires a Pre-deprivation Hearing

The general rule is that a pre-deprivation hearing is required before the government seizes private property. "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982). This Circuit has specifically held that due process requires a pre-deprivation hearing before prison officials can seize money in an inmate trust account. *Quick*, 754 F.2d at 1523-24. And following this

11

Circuit's lead, "[c]ourts have routinely ruled that situations involving nothing more urgent than inmate account withdrawals would rarely justify emergency treatment," and thus the state must provide "a predeprivation hearing." *Walters*, 525 N.W.2d at 832-33 (citing, *inter alia*, *Quick*, 754 F.2d at 1524). A pre-deprivation hearing was both feasible and necessary in this case.

Defendants attempt to distinguish the cases holding that pre-deprivation hearings are required, and retreat to generalized arguments about the state's need for money under the factors set out in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). But each of the three *Matthews* factors supports a pre-deprivation hearing in this case. First, the private interest at stake for Mr. Shinault is significant. These funds are unquestionably his property, which alone is sufficient to qualify under this prong, and in addition Mr. Shinault needs these funds to pay for the future diabetes care necessary for his survival. *E.g.*, ER46. This is more than sufficient to show a significant protected property interest. *See Goldberg v. Kelly*, 397 U.S. 254, 261-64 (1970); *W. Coach Corp. v. Shreve*, 475 F.2d 754, 754-55 (9th Cir. 1973).

The second *Matthews* factor—whether post-deprivation process creates a significant risk of erroneous deprivation—also weighs in favor of requiring pre-deprivation hearings. Defendants erroneously claim the calculation is a "routine matter[] of accounting" that simply requires multiplying the daily cost of

care by the length of the incarceration (RB32), but unlike the "ministerial" across-the-board $10 charge in the case they cite, *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000), the deprivation here requires an individualized determination of the inmate's actual ability to pay, taking into consideration whether collection would be detrimental to the inmate's need for funds after release.  O.R.S. § 179.731; *id.* § 179.640(1)(a); O.A.R. 291-203-0080; *id.* 291-203-0040.  This is far from a simple calculation, and a creates a significant risk of erroneous deprivation.  *Doehr*, 501 U.S. at 13-14 (risk of erroneous deprivation is substantial when it turns on individualized determination); *see also Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 178-79 (3d Cir. 2011) ("*Burns II*").[4]

The risk of error at a post-deprivation hearing is particularly high because inmates like Mr. Shinault may be forced to defend their property interests without the aid of an attorney.  Defendants do not dispute that they chose to have counsel represent them at the hearing, or that counsel could have aided Mr. Shinault in formulating the strongest arguments to retain his funds.  *See Turner v. Rogers*, 131 S. Ct. 2507, 2520 (2011) ("'[T]he average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his

---

[4] In addition, the Defendants made multiple mistakes in even the basic calculations for Mr. Shinault's cost of care; when explaining these errors they claimed the mistakes did not matter since they were ultimately a wash, ER213-16, but these errors are still relevant to assessing the risk of erroneous deprivation.

life or liberty, *wherein the prosecution is presented by experienced and learned counsel.*'" (citation omitted)). As explained in Mr. Shinault's opening brief, because Defendants refused to release any of the seized funds Mr. Shinault was forced to represent himself, and given his lack of education and inexperience was unable to formulate the strongest arguments in his support. AOB30-31; ER227-28; ER100-01.[5] This factor weighs heavily in favor of a pre-deprivation hearing.

The third *Matthews* factor also supports a requirement of pre-deprivation process, because the government has little interest in denying a meaningful pre-deprivation hearing. Defendants assert the state has a "high" interest in collecting cost of care funds, but their own statutes belie that interest.[6] Prison officials may only collect cost of care funds in certain limited circumstances, O.A.R. 291-203-0040(3), and they are not obligated to collect those funds even when those conditions are met, *id*. 291-203-0080. Mr. Shinault had $0.31 in his trust account before the medical liability settlement was deposited (ER72), so the

---

[5] Defendants point out that ER59, one of the sources cited in Mr. Shinault's opening brief for his lack of education, is not signed under penalty of perjury, and thus should not be treated as factual information for purposes of summary judgment. RB13 n.5. Defendants are correct. This was a citation error; similar evidence regarding Mr. Shinault's lack of education can be found at ER100-101, which Mr. Shinault did sign under penalty of perjury.

[6] Defendants' own arguments also belie that interest—they suggest Mr. Shinault had access to the funds in his account the entire time (RB22-23), but if that were true the fact that Defendants still recovered over $60,000 would suggest no need for quick state action.

Defendants cannot suggest they had any reasonable expectation of collecting funds from him. And they certainly did not expect to collect the full cost of care for Mr. Shinault's previous incarceration at a different facility, which had ended two years earlier. ER82; ER187-88. ODOC has hundreds of millions of dollars in its annual operating budget (AOB 27); any recovery from Mr. Shinault was no more than an unexpected drop in a very large bucket. To Mr. Shinault, though, the funds could represent the difference between life and death.

Defendants cite cases from the forfeiture context (RB28-29 (citing *Kaley v. United States*, 134 S. Ct. 1090, 1101-02 (2014)), suggesting that in those cases a post-deprivation hearing is allowed. But in the criminal forfeiture context, a defendant's funds can be frozen only *after a judicial finding of probable cause* to believe that "(1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley*, 134 S. Ct. at 1095. Without a judicial determination of both elements, the deprivation would violate due process. *United States v. Monsanto*, 491 U.S. 600, 615 (1989). Moreover, in the forfeiture cases, the frozen funds are ill-gotten gains from criminal activity, while here Mr. Shinault's assets were indisputably his lawful property. ER225-26.

In sum, Defendants' argument boils down to the claim that the State needed to deprive Mr. Shinault of his funds before the hearing because otherwise he would

15

have used the money to hire a lawyer to represent him in the hearing to enable him to prove that the State had no right to the funds. Defendants' post hoc justifications cannot justify the seizure. On-point Circuit precedent and the *Matthews* factors demonstrate that pre-deprivation process was feasible and post-deprivation process created a high risk of error. Mr. Shinault was thus entitled to a hearing before his funds were seized.

### D. Mr. Shinault Was Denied a Meaningful Opportunity to Be Heard at the Post-deprivation Hearing

Not only did Defendants deny Mr. Shinault pre-deprivation process, but the post-deprivation process left him without access to counsel or a meaningful opportunity to be heard.[7] Defendants concede Mr. Shinault had the right to hire counsel of his choosing at the hearing (RB34), but they claim that Mr. Shinault "was afforded significant opportunities to obtain representation" (RB35). The

---

[7] Defendants inexplicably assert that Mr. Shinault "does not argue on appeal that the district court erred by concluding that plaintiff received adequate process with respect to ODOC's ultimate withdrawal of funds from his trust account." RB18-19. The entire first section of Mr. Shinault's opening brief argued that he was denied adequate process; not only did Mr. Shinault attack the pre-deprivation seizure, he specifically argued that the post-deprivation hearing in October 2009 was inadequate because Defendants interfered with his right to hire an attorney to represent him at that hearing (AOB 28-35), and he was denied a meaningful opportunity to be heard (AOB 35-38). If Defendants mean just that Mr. Shinault does not allege anything went wrong on the specific day when Defendants put in the final wire transfer to move the funds from the reserve account into the state treasury, that is true, but hardly relevant. The point of a procedural due process claim is that adequate procedures were not afforded prior to the deprivation. *Zinermon*, 494 U.S. at 125.

facts belie that assertion. Mr. Shinault used the majority of the funds he had left after the seizure to attempt to hire an attorney, ER73; ER171-72, but the attorney withdrew, leaving Mr. Shinault without representation and without funds to hire another attorney, ER227-28; ER142; ER38; ER92. Mr. Shinault asked Defendant Hawks to release some of the seized funds for payment of legal fees, but Mr. Hawks refused. ER47; ER179-81; ER227-28.[8]

As explained at length in the opening brief, Mr. Shinault was denied a fair opportunity to be heard at the post-deprivation hearing. AOB 35-58. Defendants interfered with Mr. Shinault's ability to hire counsel to represent his interests, and neither the Administrative Law Judge ("ALJ") nor Defendants gave individualized consideration to Mr. Shinault's request for a waiver. *Id.* Defendants ignore the violations during the hearing except to argue that a specific remark by the ALJ was in reference to a hypothetical situation of a plaintiff with serious medical needs. RB35 n.7. But as that colloquy shows, the ALJ believed that even in a case where an inmate put forth uncontestable evidence of medical need, there would need to be a separate proceeding to govern the waiver determination. ER241. The ALJ

---

[8] Defendants take out of context Mr. Shinault's statement that he "wished to proceed" with the post-deprivation hearing despite his lack of counsel. RB34. Mr. Shinault said he wished to proceed only *after* the ALJ had rebuffed his attempts to explain the hearing should be postponed, and denied his request for an attorney. ER135-36, 141-42, 146. He had no choice but to proceed. And even then, he continued to assert throughout the hearing that he wished to exercise his right to hire counsel, but the ALJ refused his requests. ER159; ER179-81.

committed legal error in assuming that even strong evidence of need would not

justify a waiver in the sort of post-deprivation hearing afforded to Mr. Shinault.

In sum, neither the ALJ nor Defendants gave any individualized

consideration to Mr. Shinault's request for a waiver from the cost of care charges,

and there was at minimum a material dispute over whether the ALJ hearing

complied with the requirements of due process. The district court's grant of

summary judgment to Defendants should be reversed.[9]

### E. Defendants Are Not Entitled to Qualified Immunity

The district court did not reach the qualified immunity defense that

Defendants now raise.[10] Qualified immunity inquiry is a two-step process:

"Government officials are not entitled to qualified immunity if (1) the facts 'taken

---

[9] The proper remedy for this procedural due process violation is for the Court to remand to allow Defendants to show they would have taken the same action— denied Mr. Shinault's request for a waiver of the cost of care charges—had due process been provided and Mr. Shinault had the opportunity to be represented by an attorney at the hearing. *See Carey v. Piphus*, 435 U.S. 247, 260 (1978); *Burns II*, 642 F.3d at 180-82. As *Burns II* explained, the Supreme Court's burden-shifting framework set out in *Carey* provides that "the plaintiff in a § 1983 case must prove that a constitutional violation has occurred, and that it was the proximate cause of his or her injuries. Once the plaintiff clears both hurdles, the burden shifts to the defendant, who then has an opportunity to prove that the same actions would have occurred even if due process had been provided." 642 F.3d at 181.

[10] Mr. Shinault acknowledges that sovereign immunity bars his suit against ODOC, but respectfully requests that the Director of ODOC, Colette S. Peters, be substituted, consistent with his arguments below that defendants were individuals sued in their personal capacities. *See* D.Ct. Dkt. 45 at 8-11.

in the light most favorable to the party asserting the injury show that the defendants' conduct violated a constitutional right' and (2) the right was clearly established at the time of the alleged violation." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) (alterations and citation omitted); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). For the reasons explained above, Defendants violated Mr. Shinault's constitutional right to procedural due process.

Mr. Shinault's right to procedural due process in connection with the seizure of funds from his trust account was clearly established by 2009. "To be *clearly* established, the foregoing law only must have been 'sufficiently clear that a reasonable official would understand that what he was doing violated a constitutional right.'" *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013) (alterations and citation omitted). The "salient question" in deciding issues of qualified immunity is whether the state of the law in 2009 gave Defendants "fair warning" that their treatment of Mr. Shinault was unconstitutional. *Id.*; *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Here, this Circuit held decades ago that due process requires a pre-deprivation hearing before prison officials can seize money in inmate trust accounts. *Quick*, 754 F.2d at 1523-24. Defendants argue *Quick* is not directly on point because it involved a seizure rather than a freeze. RB26-27. Again, though, Defendants' actions qualified as a seizure, and in any event

19

> Precedent directly on point is not necessary to demonstrate that a right is clearly established. Rather, if the unlawfulness is apparent in light of preexisting law, then the standard is met. In addition, even if there is no closely analogous case law, a right can be clearly established on the basis of common sense.

*Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001) (citation and internal quotation marks omitted). In addition, the Third Circuit decided *Burns I* before the conduct at issue here, holding that a mere assessment of funds in an inmate trust account triggers due process protection. *Burns I*, 544 F.3d at 291. This gave Defendants ample warning that seizing and freezing the funds in an inmate trust account must comport with due process. Because due process protection applies, the analysis in *Quick* controls the conclusion that a pre-deprivation hearing was required.

Moreover, qualified immunity "is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v. Hunter*, 669 F.3d 937, 939-40 (9th Cir. 2012); *Henry A. v. Willden*, 678 F.3d 991, 999 (9th Cir. 2012) ("Qualified immunity is not available as a defense in § 1983 cases . . . 'against individuals where injunctive relief is sought instead of or in addition to damages.'" (citation omitted)). Mr. Shinault's complaint sought declaratory relief against all Defendants, and fairly read includes a claim for injunctive relief in the form of the return of his

seized funds as well.  ER114-16.  Defendants are not entitled to immunity in this context and on these facts.

## II. DEFENDANTS VIOLATED MR. SHINAULT'S CLEARLY ESTABLISHED RIGHT TO ADEQUATE MEDICAL CARE

Defendants do not dispute that they knew that Mr. Shinault suffered from diabetes.  They do not dispute that diabetes constitutes a serious medical need. They do not deny they were aware that the funds in Mr. Shinault's trust account were from the manufacturer of the prescription medication that caused Mr. Shinault's diabetes, nor that they knew these funds were designed to pay for Mr. Shinault's future medical expenses.  RB37-40.

Instead, Defendants attempt to disavow their responsibility to provide adequate medical care by drawing an arbitrary line between when they seized Mr. Shinault's funds and when the official process authorizing their seizure concluded.  RB38-39.  But at the moment Defendants seized Mr. Shinault's funds—June 2, 2009, *during* Mr. Shinault's incarceration—they knowingly rendered him unable to obtain adequate medical care.  This is sufficient to assert a viable Eighth Amendment claim and defeat qualified immunity.

### A. Defendants Denied Mr. Shinault Adequate Medical Care by Seizing All Available Funds for Future Diabetes Care

Diabetes is widely recognized as a serious medical need, and failure to provide for the legitimate medical needs of a diabetic, such as diet and medication,

21

supports a claim for deliberate indifference. *Lolli*, 351 F.3d at 418-20. This rule was clearly established well before the 2009 conduct at issue here. *Id.*

Mr. Shinault demonstrated that Defendants knew of his serious medical need during his incarceration. ER90. He received treatment from the Department of Corrections and testified that his diabetes and treatment regimen are documented in his prison medical files, which Defendants could access during and after his incarceration. ER39; ER51. And he explained in blunt terms what could happen if Defendants left him unable to care for his diabetes—he would die. ER40; ER46; ER94; ER243.

Defendants disregarded the grave risk of harm that would befall Mr. Shinault, choosing instead to recover the maximum amount of cost of care fees despite a statutory requirement to consider the welfare of the inmate. Defendants seized more than $60,000 earmarked for future care and left Mr. Shinault with only $5,000—the baseline figure generally supplied to all inmates upon release—and a minimal supply of medication. ER16-17 n.3; ER73; ER76-83; ER176; ER183. At the time Defendants issued the ability to pay order, Defendants knew the determination would render Mr. Shinault unable to treat his diabetes once his limited supply of medication ran out, but refused to waive Mr. Shinault's cost of care or reduce the amount assessed to give him a chance to survive. These actions amount to deliberate indifference. *See Lolli*, 351 F.3d at 419 ("A defendant is

liable for denying needed medical care . . . if he 'knows of and disregards an excessive risk to immediate health and safety.'" (citation omitted)); *Wakefield*, 177 F.3d at 1162-64 (the defendants knew of the inmate's medical disorder, knew what would happen if his disorder went untreated, but made no attempt to assist the inmate in obtaining what he needed to treat the disease and ultimately released the inmate without the ability to control his disease); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (viable Eighth Amendment claim where officials know of the harmful effects of their actions but purposefully refuse to provide remedies).

The fact that Mr. Shinault would not suffer harm from lack of medication until after his release does not erase Defendants' Eighth Amendment obligations. *See Wakefield*, 177 F.3d at 1164 (prison officials' obligations do not automatically end at the prison gates). At the time Defendants were notified of Mr. Shinault's medical needs, and at the time Defendants seized funds from his trust account, he was a prisoner in their care. ER73; ER90. Indeed, Defendants seized his funds to recoup costs *because* he was a prisoner (ER76; ER84), and this seizure prevented Mr. Shinault from acting on his own behalf to obtain medical treatment upon release. The deliberate indifference standard thus applies. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-202 (1989); *Haley v. Cnty. of Del Norte, Cal.*, 2009 WL 3568897, at *7-8 (N.D. Cal. Oct. 30, 2009)

(applying deliberate indifference standard because defendant "had a clear obligation to *provide* medical care for plaintiff—releasing plaintiff to fend for himself is not the same thing as providing care").

Defendants seized Mr. Shinault's trust funds despite knowledge that these medical settlement funds were designed to provide for his diabetes treatment upon release. Defendants ignored Mr. Shinault's request for a waiver from the cost of care charges because of his medical condition, and instead chose to seize almost every cent he possessed. This shows conscious disregard of an excessive risk to Mr. Shinault's health, and constitutes deliberate indifference. *See Clement*, 298 F.3d at 904.

### B. Defendants Are Not Entitled to Qualified Immunity Because Mr. Shinault Had a Clearly Established Right to Future Medical Care

The law governing a prison official's responsibilities to provide constitutionally adequate medical care to individuals with diabetes was clearly established when Defendants seized Mr. Shinault's funds. A "defendant is liable for denying needed medical care . . . if he 'knows of and disregards an excessive risk to immediate health and safety.'" *Lolli*, 351 F.3d at 419 (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). Also clearly established at the time of Defendants' unconstitutional actions was that the obligation to provide medical care does not end at the prison gate. *Wakefield*, 177 F.3d at 1164; *see also*

*Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.").

Notably, Oregon itself understands this. Oregon contemplates that actions taken by the Department of Corrections during an inmate's incarceration may have drastic negative effects on that inmate's well-being once released, and imposes restraints on Defendants' ability to recoup costs that interfere with an inmate's legitimate needs. Specifically, Oregon law requires Defendants to consider an inmate's present financial picture in the context of that inmate's future well-being—including the financial resources an inmate will need following his release to be able to survive in the community—and tailor the cost of care assessment (if any) to that inmate's need. *See* O.R.S. § 179.640(1)(a); *id*. § 179.731; O.A.R. 291-203-0040(5); *id*. 291-203-0080; SB 183 Public Hearing Before the S. Comm. on Judiciary, 2001 Leg. 71st Sess. (Or. 2001). In light of this mandate, Defendants cannot reasonably assert they were not on notice that they were obligated to allow Mr. Shinault to retain sufficient funds to ensure adequate medical care past his release.

Defendants assert they provided all the post-release care required by the Eighth Amendment, trying to distinguish *Wakefield*. RB39-40. *Wakefield* concerned a prison official's failure to give an inmate the medication he needed after his release from prison. 177 F.3d at 1161-62. It is true that Wakefield's

physician only prescribed a two-week transitional supply of medication—but the key legal point is that this Court held the inmate stated a viable deliberate indifference claim even though the harm that befell him did not occur until after his release from incarceration. *Id.* at 1162, 1164-65. *Wakefield* shows that, at least by 1999, this Court recognized deliberate indifference claims based on prison officials' interference with an inmate's access to medication even when the harm does not occur until after release from incarceration.

"'[P]recedent directly on point is not necessary to demonstrate' that a right is clearly established." *Giebel*, 244 F.3d at 1189 (citation omitted). Rather, a right is "clearly established" sufficient to overcome a claim of qualified immunity if "a general constitutional rule already identified in the decisional law . . . appl[ies] with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful.'" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (alteration and citation omitted); *see also Hope*, 536 U.S. at 741. Defendants were on notice that a post-release injury may be sufficient to establish an Eighth Amendment violation where the action causing the injury occurred during confinement and that action was sure or very likely to cause serious illness and needless suffering. *Wakefield*, 177 F.3d at 1161-64; *see Helling*, 509 U.S. at 33 ("We have great difficulty in agreeing that prison authorities may not be deliberately indifferent to an inmate's current health

problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.").

In light of the clearly established law, Defendants' actions could not be classified as objectively reasonable. A reasonable person in Defendants' position would have known that this conduct violated Mr. Shinault's right to adequate medical care for his diabetes. Specifically, Defendants knew what the appropriate level of care for a diabetic entailed and knew the funds they were leaving in Mr. Shinault's control were grossly inadequate to provide for this care. The decision below should be reversed.

## CONCLUSION

Mr. Shinault respectfully requests that this Court reverse the district court's grant of summary judgment.

Respectfully submitted,

Dated: September 10, 2014

DANIEL H. BOOKIN
ANNA-ROSE MATHIESON
O'MELVENY & MYERS LLP

By:   *Anna-Rose Mathieson*

*Pro Bono Attorneys*
*for Appellant Lester R. Shinault*

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant Lester Shinault certifies:

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief contains 6,692 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Word 2010 in 14-point Times New Roman.

Respectfully submitted,

Dated:  September 10, 2014

DANIEL H. BOOKIN
ANNA-ROSE MATHIESON
O'MELVENY & MYERS LLP

By:    *Anna-Rose Mathieson*

*Pro Bono Attorneys*
*for Appellant Lester R. Shinault*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 10, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

Dated: September 10, 2014

DANIEL H. BOOKIN
ANNA-ROSE MATHIESON
O'MELVENY & MYERS LLP

By: _Anna-Rose Mathieson_

*Pro Bono Attorneys*
*for Appellant Lester R. Shinault*